IN THE UNITED STATES FEDERAL COURT
FOR THE DISTRICT OF PUERTO RICO

| | |
|---|---|
| **CONSORCIO SG INVESTMENT GROUP**<br><br>Complainant<br><br>V<br><br>**NODUS INTERNATIONAL BANK INC., TOMÁS NIEMBRO-CONCHA, JUAN RAMÍREZ-SILVA**<br><br>Defendants | Case No.<br><br><br><br>BREACH OF CONTRACT; CONTRACTUAL DOLO AND FRAUD; PERSONAL LIABILITY OF THE OWNERS; DAMAGES |

## COMPLAINT

**TO THE HONORABLE DISTRICT COURT:**

**COMES NOW** Consorcio SG Investment Group, undersigned counsel, and respectfully state as follows:

### I.  INTRODUCTION

1. On January 6, 2021, Consorcio SG Investment Group ("SG"), an Ecuador-based company, signed a Commercial Deposit Agreement ("Agreement") with Nodus International Bank, Inc. ("Nodus").

2. The account ran smoothly until November 2022, when transfer delays began to affect SG. Initially, international transfers that typically took between 72 and 96 hours (about eight days) started taking an average of three weeks to complete.

3. In January 2023, Nodus was still able to process transfers under $10,000 USD. However, by February 2023, all outgoing transfers stopped despite being marked as approved by the bank.

4. The delays were attributed to changes in Nodus' correspondent bank since November 2022, leading to approximately **$300,000** USD in pending transfers which led SG to have significant issues in their business because of the delays and pending transfers.

5. Upon multiple requests from SG to Nodus for the return of the funds in its deposit account, Nodus consistently maintained that the bank had the solvency and liquidity to meet its obligations to depositors. However, Nodus later announced the cessation of operations and initiated a liquidation process.

6. Moreover, Defendants Niembro-Concha and Ramirez-Silva committed fraud both before and during that liquidation process by means of false representations, concealing funds and illegally benefiting from the liquidation to the detriment of SG.

7. To this day, Nodus retains the total balance of SG's account, amounting to **$1,365,554.04**, and has yet to return the money to SG.

8. Defendants' actions caused actual damages and warranted punitive damages.

## II.    JURISDICTION AND VENUE

9. This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. §1332 since there is complete diversity between Plaintiff and Defendants and the amount in controversy exceeds $75,000.00, exclusive of interest and costs.

10. The venue is proper in this judicial district pursuant to 28 U.S.C. § 1391(b)(1) and 1391(c)(2), as it is the judicial district where at least one defendant resides.

## III.    THE PARTIES

11. Plaintiff Consorcio SG Investment Group ("SG") is a legally incorporated company in Ecuador, SG is an investment management firm that, through a legally supported commercial loan agreement in Ecuador, receives funds from clients to invest in international stock markets.

Its core product is financial advisory and personal finance management, offering clients the opportunity to diversify their capital in the world's leading stock exchanges.

12. Co-defendant, Nodus International Bank, Inc., is a domestic for-profit corporation registered in Puerto Rico. It is an international banking entity organized under Puerto Rico Act Number 52 of August 11, 1989, as amended ("Act 52-1989") and licensed to operate as an International Bank under License Number EBI-60 issued on November 17, 2009, by the Office of the Commissioner of Financial Institutions of Puerto Rico ("OCIF"). Their physical and mailing address is 252 Ponce de Leon Ave, Citi Towers Buildings Suite 1501, San Juan, PR 00918.

13. Co-defendant, Tomás Niembro Concha is the President of Nodus with 60% total shares. By information and belief, he is of legal age, and a citizen of Venezuela with residence in Miami, Florida.

14. Co- Defendant Juan Ramírez Silva is the president of the Board of Directors of Nodus and owner of the 40% share remanent. Based on information and belief, he is of legal age, and a citizen of Venezuela with residence in Miami, Florida.

IV.     STATEMENT OF FACTS

15. On January 6, 2021, the plaintiff, SG, a company based in Quito, Ecuador, signed a Commercial Deposit Account Agreement ("Agreement") with Nodus International Bank, Inc. ("Nodus"). *Exhibit I: Commercial Deposit Account Agreement.*

16. Pursuant to the Agreement, the Bank would allow transfers and withdrawals if the account had enough funds.

17. The account operated without issues until November 2022. From that day forward, transfers began to experience delays in their issuance and receipt. Although those transfers were

3

eventually completed, the average time for international transfers (which was initially from 72 to 96 hours) extended to an average of three weeks.

18. In January 2023, Nodus was able to process transfers for amounts under $10,000. However, since February 2023, no outgoing transfers requested by SG, were completed, despite being informed that they had been approved. The issue falsely reported by the Nodus was a change in its correspondent bank, a problem that had arisen since November 2022. Nevertheless, by February 2023, transfers ceased to be executed altogether.

19. This resulted in pending transfers amounting to approximately $300,000 USD, which caused significant issues and liabilities to SG.

20. On May 5th, 2023, Nodus entered a Voluntary Liquidation and Dissolution Plan negotiated with the Office of the Commissioner of Financial Institutions of Puerto Rico ("OCIF"). This Plan appointed Driven PSC as administrator (the "Administrator") to ensure compliance with the conditions agreed between Nodus and the OCIF.

21. On August 10, 2023, Nodus sent a letter to all its depositors announcing the status of the liquidation process and stating that they had identified different options to be able to process and/or migrate the funds of all Nodus customers. *Exhibit II- Letter from Nodus of status of liquidation.*

22. Months later, on October 3, 2023, OCIF issued a Notice and Tentative and Standing Order for the Appointment of a Receiver and Revocation of License appointing a trustee. This trustee was to periodically inform depositors and send them offers for the disbarment of depositors' funds.

23. To handle the administrative claim, SG announced the undersigned legal representation to receive any offer or communication. However, the trustee, on more than one occasion, ignored

the undersigned legal representation and communicated offers directly to SG in detriment of their right to be legally represented in this situation.

24. Since there was no effective communication from the trustee, pursuant to Law No. 41-2019, SG, through the undersigned legal representation, requested information directly from OCIF to stay informed about the liquidation process of Nodus.

25. Subsequently, on April 4, 2024, the OCIF issued a *Complaint and Order to Lift the Corporate Veil of Nodus,* arguing that co-defendants Ramirez-Silva and Niembro-Concha were continuing to abuse Nodus' corporate structure to the detriment of its depositors. In addition, days before the signing of the Nodus liquidation plan, the co-defendants were carrying out transactions in fraud of creditors.

26. The OCIF also accuses Niembro-Concha of using another corporate entity as a subterfuge to benefit from the liquidation process of Nodus.

27. The Administrator's preliminary investigations revealed fraudulent actions by Niembro-Concha, who exploited the corporate structure for personal gain during the liquidation process. Using Financial Technology, a company he ultimately controlled, Niembro-Concha improperly funneled funds to himself under the guise of a salary, bypassing restrictions that prevented him from accessing Nodus's assets directly due to his Venezuelan citizenship. These actions violated the Liquidation Plan, which prohibited directors and officers from profiting, demonstrating Niembro-Concha's deliberate misuse of his position for financial benefit. Ramirez-Silva also benefited from this.

28. Following investigations conducted by the Administrator and reported to the OCIF, after the signing of the Liquidation Plan, it was discovered that Defendants Niembro-Concha and Ramirez-Silva, as shareholders of Nodus, instead of using the available mechanisms to carry

out an orderly liquidation, continued to exploit Nodus's corporate structure and other affiliated entities for their own benefit, at the expense of depositors.

29. An example of this was the collaboration with Financial Technology, an entity based in Barbados with offices in Venezuela, owned by the Altamira Asset Management Company, whose ultimate beneficiary is Mr. Niembro-Concha.

30. The Administrator found that, through Financial Technology, Mr. Niembro-Concha was receiving a "salary" of sorts that allowed him to indirectly profit from the liquidation process, taking advantage of his position within the corporate structure to access funds from Nodus, something he could not do directly due to his status as a Venezuelan citizen without legal presence in the United States.

31. It also follows from the investigation that, concerning Nodus Finance, on April 28, 2023, Nodus, without OCIF's approval, entered an agreement with Nodus Finance. As part of this agreement, (i) Nodus acquired a loan portfolio from Nodus Finance for $26,011,780.08, while simultaneously canceling debts owed by Nodus Finance to Nodus totaling $25,738,875.65, and (ii) it was agreed that Nodus Finance would receive a payment from Nodus for managing the loans. Furthermore, between June 20, 2023, and August 29, 2023, the co-defendants, leveraging their roles as directors in both companies, reduced the balance of Nodus Finance's funds held in Nodus from $986,313.83 to $25.28, nearly draining the account entirely.

32. It is important to highlight that it was not Nodus Bank as an entity that entered into an agreement with Nodus Finance, Niembro-Concha and Ramirez-Silva hid behind Nodus' corporate structure to defraud their depositors.

33. As a result of all the Defendants' actions, SG has been unable to dispose of its funds, which include investment funds from its clients around the world and is suffering actual damages.

## V.   CAUSES OF ACTION

### A.   Breach of contract

34. SG incorporates by reference all the preceding paragraphs as if fully set forth herein.

35. The Agreement between SG and Nodus establishes that the depositor may withdraw available funds from its commercial account to the extent funds are available in said commercial account.

36. Pursuant to Section XIV, subsection 6 of the Agreement,

   **"[t]he Depositor and the authorized signatories may make withdrawals from the account up to the total balance available at that time, with the provision that a withdrawal of funds that reduces the balance below the required minimum will result in the closure of the account, subject to the payment of any applicable fees for violating the required minimum balance." (Unofficial translation)**

37. Although the Bank has an obligation to allow withdrawals from the depositor or authorized signee, "[t]he Bank is not obligated to allow withdrawals, debits, or drafts charged to the Account when there are insufficient available funds to cover the total amount of the withdrawal, or when said funds secure obligations of the Depositor to the Bank."

38. Section XIV, Subsection 14 provides that "[w]hen the Bank receives checks or other items for deposit or collection, it acts as the Depositor's collecting agent and will record them subject to the receipt of final payment from the paying bank. In such a case, the Bank's liability will be limited to exercising ordinary due care."

39. Moreover, Puerto Rico's Civil Code establishes that "[t]he party to a contract injured by another party's breach of the contract can demand that the breaching party cure its breach and fulfill its obligations under the contract. The injured party can also demand payment for

7

damages derived from the breach. Art. 1255 of the Puerto Rico Civil Code, PR. Laws Ann. Tit. 31 § 9823.

40. Furthermore, Section XIV, Subsection 9 of the Agreement provides that "[t]he balance reflected in the Bank's records shall constitute prima facie evidence of the balance owed to the Depositor."

41. SG complied with the agreement, as it made transfers and deposits in accordance with its terms. However, even before the liquidation process, Nodus breached its contractual duty by failing to transfer the amounts requested by SG, even though their Agreement established that upon request, the depositor could deposit, transfer or withdraw their funds.

42. After the liquidation process began, the co-defendants, through their own actions, prevented and continue to prevent SG from receiving the funds held in the account.

43. Consequently, through its deliberate and grossly negligent and fraudulent conduct, Nodus violated SG's rights under the Contract and, simultaneously, breached its obligations thereunder.

44. Given Nodus' breach of the Agreement, SG further demands the resolution of the agreement and for Nodus to return all funds on SG's account.

### B. Contractual Dolo and Fraud

45. SG incorporates by reference all the preceding paragraphs as if fully set forth herein.

46. Further, to survive a motion to dismiss for failure to plead fraud with particularity, the plaintiff must have included specific pleadings as to time, place and contents of the false representations, as well as the identity of the person or persons making the misrepresentation and what the person or persons obtained thereby. <u>Generadora de Electricidad del Caribe, Inc. v. Foster Wheeler Corp</u>., 92 F. Supp. 2d 8, 18 (DPR 2000). "[d]olo can be manifested in the performance of a contractual obligation where a party, knowingly and intentionally, through

8

deceitful means, avoids complying with its contractual obligation." 92 F.Supp.2d 8, 18 (DPR 2000).

47. "[D]olo can take two forms: (1) dolo in the formation of contracts, and (2) dolo in the performance of contractual obligations." Portugués-Santana v. Rekomdiv Int'l, 657 F.3d 56, 59 (1st Cir. 2011).

48. On the other hand, it's worth noting that, under Puerto Rico law, a party alleging fraud "must demonstrate: '(1) a false representation by the defendant; (2) the plaintiff's reasonable and foreseeable reliance thereon; (3) injury to the plaintiff as a result of the reliance; and (4) an intent to defraud.'" Travelers Cas. & Sur. Co. of Am. v. Vázquez Colón, 2021 WL 4267883, at 11(D.P.R. 2021) (internal citations omitted).

49. Nodus falsely claimed that the bank had the solvency and capacity to perform its functions as a bank. However, Nodus lacked the capacity and intention to execute the transfer of funds upon their clients' request, in violation of the terms agreed upon in the Agreement.

50. Moreover, even after Nodus' liquidation process had begun, Nodus continued to inform their depositors, including SG, that options were available to recover their funds, when no real viable option was given to them.

51. SG relied on Nodus that misled them into believing that it was willing and able to make the transfers and withdrawals as requested. SG relied on such misrepresentations in good faith, to its detriment since SG suffered damages by being unable to withdraw or transfer its money and, as a result, had to resort to other funds to complete its projects and meet its clients' requirements.

52. Acting outside of the scope of their duties in Nodus bank, Niembro-Concha and Ramirez Silva misled SG into believing that requested transfers were delayed but would shortly be disbursed.

53. Both, throughout the whole process, made false representations and omitted information to SG that would have revealed that Nodus would not actually disburse the funds held.

54. Additionally, before and after the start of the liquidation process, Ramirez-Silva and Niembro-Concha carried out transactions disposing of Nodus' funds, as evidenced by the OCIF Complaint to Pierce the Corporate Veil, with the clear intent to defraud their depositors.

55. Co-defendants illegally disposed of SG's money, and other depositant's funds as well, which caused SG to be unable to access their money to this day.

56. Even in the liquidation process, SG relied on co-defendants to carry out the process in good faith, and clearly Niembro-Concha and Ramirez-Silva did not do that. Defendants negotiated with SG in bad faith incurring in contractual dolo.

### C. <u>Personal liability of the owner</u>

57. SG incorporates by reference all the preceding paragraphs as if fully set forth herein.

58. Section 20 (d) of Law No. 52 of August 11, 1989, as amended, also known as "International Banking Center Regulatory Act", provides that "[a]ny director, official, or employee of an international banking entity or of the person of which the international banking entity is a unit, who voluntarily misrepresents the financial condition of an international banking entity or about any transaction to be carried out by, or carried out by the international banking entity, or who declines to provide information legally requested by the Commissioner, shall commit a felony and, …." PR Laws ann. tit. 7 § 232p.

59. Section 20(b) states that:

> Any officer or employee of an international banking entity or of a person of which the international bank is a unit, who receives in the name of such international bank any deposit or contract for a loan with the knowledge that the international bank or the person of which the same is a unit, is insolvent, guilty of a felony, and convicted of any felony, shall be punished by imprisonment for not less than three (3) years nor more than seven (7) years, or a fine of not less than five thousand dollars

        ($5,000) nor more than ten thousand dollars ($10,000) or both penalties at the discretion of the court. PR Laws ann. tit. 7 § 232p

60. It constitutes fraud for a bank and its shareholders to fail to carry out requested transfers and deposits by its depositors without just cause. Niembro-Concha and Ramirez-Silva retained its depositors' funds with no just cause or justification, and made SG, for example, believe that transfers were on its way when in fact, Niembro-Concha and Ramirez-Silva knew the state Nodus was in.

61. Furthermore, Niembro-Concha and Ramirez-Silva willfully and knowingly disposed of Nodus' assets, and depositors' funds, for their own pecuniary benefit. When the bank enters a voluntary liquidation process, it is fraudulent for its members to begin disposing of funds and manipulating the process, ultimately depriving depositors of their rightful access to funds.

62. Such actions by Niembro-Concha and Ramirez-Silva did not only violate their fiduciary duties to the bank, but were also fraudulent, leaving depositors, such as SG, without access to their funds for years, and to the date, causing significant financial harm to SG.

63. Niembro Concha- and Ramirez Silva hid behind Nodus to defraud their creditors and depositors, with the clear intention of personally benefiting at the expense of all the bank's depositors.

### D. <u>Damages</u>

64. SG incorporates by reference all the preceding paragraphs as if fully set forth herein

65. Under Article 1536 of the Puerto Rico Civil Code, a person who through fault or negligence causes injury to another is obligated to repair it. *See* 31 P.R. Laws Ann. § 10801.

66. A person who in any way contravenes the tenor of his or her obligation must compensate for the damage caused. *Id* §1158.

67. Compensation for damages for the breach of the obligation, or for its partial, late or defective performance includes consequential damage and loss of profit. *Id* §1167.

68. The debtor in good faith is liable for the damages foreseen or foreseeable at the time the obligation is created. In the event of willful misconduct, the debtor is liable for all damages arising from its non-compliance, regardless of foreseeability. *Id* §1168.

69. If the obligation consists of the payment of a sum of money and the debtor is in arrears, the compensation for damages, if there is no different agreement, consists of the payment of the agreed interest and, in the absence of an agreement, of the legal interest. Interest fixed by the Office of the Commissioner of Financial Institutions for the payment of court judgments is considered legal. Interest is computed in a simple and non-compound manner. *Id* §1169.

70. Since SG had pending transfers "approved" yet not processed by Nodus, SG was unable to perform their duties as investors and financial planners for their clients all over the world breaching its fiduciary and contractual duties.

71. In addition, having Nodus retained more than a million dollars of SG's funds, it caused opportunity costs and financial harm.

72. These actions caused damage and losses of at least $3 million USD.

73. SG respectfully requests for this Court, in its judgment, to award attorney's fees and costs.

### E. **Punitive Damages**

74. SG incorporates by reference all the preceding paragraphs as if fully set forth herein

75. Defendants' actions go beyond mere breach of contract and demonstrate intentional and malicious conduct aimed at defrauding SG and other depositors. The co-defendants, acting with deliberate indifference to SG's rights, knowingly engaged in a scheme to defraud, hide funds, and personally benefit from the liquidation process at the expense of depositors.

76. Defendants Niembro-Concha and Ramirez-Silva misused their positions and Nodus's corporate structure to facilitate fraudulent transactions and siphon funds that rightfully belonged to SG. These acts of deception were calculated to maximize their personal gain while causing substantial harm to SG, depriving the company of access to over $1.3 million of its own funds.

77. The fraudulent acts of the Defendants—both before and during the liquidation process—were willful, intentional, and committed with a reckless disregard for SG's rights. This egregious conduct justifies an award of punitive damages to punish Defendants and to deter similar misconduct in the future.

78. The nature of the Defendants' fraudulent actions, coupled with their attempts to conceal their activities and mislead SG, demonstrates the necessity of imposing punitive damages. Such damages are warranted to reflect the severity of Defendants' misconduct and to ensure that they are held accountable for the harm caused to SG.

79. SG, therefore, respectfully requests that this Court award punitive damages in an amount sufficient to punish Defendants for their fraudulent actions and to serve as a deterrent to future similar conduct, in an amount to be determined by the Court, but not less than $3,000,000.

## VI.    PRAYER FOR RELIEF

**WHEREBY,** SG respectfully requests that this Court enter judgment:

a) Granting resolution of the Deposit Agreement.

b) Ordering Nodus to transfer to SG all pending wire transfers, and all remaining funds, belonging to the latter, for **$1,365,554.04** in the commercial account and proceed to close the account.

c) Ordering Nodus and codefendants Niembro-Concha y Ramirez-Silva to compensate SG for all actual damages caused by the fraudulent breach of contract of the Deposit Agreement in an amount of no less than $3,000,000.

d) Awarding SG punitive damages for defendants' fraudulent conduct against plaintiff of no less than $3,000.00.

e) Awarding SG attorney's fees and costs to the sum of $25,000.00.

Submitted, October 11, 2024.



P.O. Box 10779
Ponce, Puerto Rico 00732
Tel.: 787-848-0666
Fax: 787-841-1435
notificaciones@bufete-emmanuelli.com

*s/ Rolando Emmanuelli Jiménez*
**Lcdo. Rolando Emmanuelli Jiménez**
**USDC:** 214105
rolando@emmanuelli.law